UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

_____

In re:

GWENDOLYN MARIE THURMAN-PRYOR,

    Debtor.

_____/

MICHIGAN DEPARTMENT OF HEALTH
AND HUMAN SERVICES,

    Plaintiff,

-vs-

GWENDOLYN MARIE THURMAN-PRYOR,

    Defendant.

_____/

Case No.  BL 22-01896
Chapter 13

Adversary Proceeding
No. 23-80021

**OPINION DENYING DEBTOR'S MOTION TO DISMISS**

Appearances:

Adam M. Roose, Esq., Lansing, Michigan, attorney for Michigan Department of Health and Human Services.

Michelle Marrs, Esq., Ann Arbor, Michigan, attorney for Gwendolyn Marie Thurman-Pryor.

I.      INTRODUCTION and JURISDICTION.

The debt at issue in this adversary proceeding arises from a prepetition determination that Gwendolyn Marie Thurman-Pryor (the "Debtor") received approximately $15,000 in overpayments for her work as a home health aide under a program administered by the Michigan Department of Health and Human Services (the "MDHHS"). When the Debtor filed her chapter 13 petition, she scheduled the debt but

1

identified the creditor generically as the "State of Michigan" and utilized a mailing address that did not result in actual notice of the case and related deadlines being given to the MDHHS.  When the MDHHS learned of the bankruptcy case approximately five months after it was filed, the MDHHS brought this adversary proceeding, alleging that the debt for overpayments is nondischargeable as a debt for fraud under § 523(a)(3) of the Bankruptcy Code.[1]

In the Motion to Dismiss currently before the court, the Debtor asserts that the complaint should be dismissed because it was not filed within sixty days after the first date set for the § 341 meeting of creditors in accordance with Federal Rule of Bankruptcy Procedure 4007(c).  The MDHHS counters that the debt at issue was not properly listed or scheduled in the Debtor's bankruptcy case and that it did not have adequate notice or actual knowledge of the case in time to file a timely nondischargeability complaint.  As a result, the MDHHS argues that its complaint was properly filed under § 523(a)(3) and should be considered timely because § 523(a)(3) complaints may be filed "at any time" under Bankruptcy Rule 4007(b).

The court has jurisdiction over this chapter 13 bankruptcy case.  28 U.S.C. § 1334.  This bankruptcy case and all related proceedings have been referred to this court for decision.  28 U.S.C. § 157(a); LGenR 3.1(a) (W.D. Mich.).  The ultimate issue to be decided by the court in this proceeding is whether the debt owed to the MDHHS is nondischargeable in the Debtor's bankruptcy case.  A nondischargeable debt action is a statutory core proceeding and this court has constitutional authority to enter a final order.

---

[1]     The Bankruptcy Code is set forth in 11 U.S.C. §§ 101 *et seq*.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ __."

28 U.S.C. § 157(b)(2)(I) (determinations as to the dischargeability of certain debts); *see, e.g., Hart v. Southern Heritage Bank (In re Hart)*, 564 F. App'x 773, 776 (6th Cir. Apr. 28, 2014) (unpublished opinion).

## II.   FACTS AND PROCEDURAL HISTORY.

The facts that are relevant to the Debtor's Motion to Dismiss are generally undisputed.   The following summary is gleaned primarily from the pleadings, and attachments to the pleadings, in the adversary proceeding and the base case, as well as from the exhibits submitted by the parties in support of and response to the Debtor's motion.

### A.   *Background Regarding Prepetition Debt to the MDHHS*.

Prior to the filing of her bankruptcy case, the Debtor worked as an individual provider of personal care services under the Home Help program, which is a Medicaid program administered by the Michigan Department of Health and Human Services. According to the complaint in this adversary proceeding, a prepetition audit of the Debtor's Home Help reimbursements showed that she was overpaid $15,061.41 for services during the time period from December 7, 2017, to March 31, 2022.  The Office of Inspector General ("OIG") notified the Debtor of this determination via a letter dated May 13, 2022. (*See* Complaint, AP Dkt. No. 1, at Exh. 3.)  On July 1, 2022, Assistant Attorney General David H. Goodkin ("AAG Goodkin") wrote the Debtor a demand letter, stating that he had been assigned to represent the MDHHS and the OIG in collection of the debt and suggesting various repayment options.  (*See* Brief in Response to Motion to Dismiss, AP

3

Dkt. No. 12, at Exh. 1, referred to herein as the "Goodkin demand letter."[2])  The address listed for the Department of Attorney General in the letterhead was "P.O. Box 30754, Lansing, Michigan 48909."  (*Id*.)  An affidavit filed by AAG Goodkin in opposition to the present motion states that he "actively communicated" with the Debtor about repayment of the debt to the MDHHS from at least July 18, 2022, to August 19, 2022.  (*Id*. at Exh. 2, ¶ 6, referred to herein as the "Goodkin affidavit.")  AAG Goodkin represented that the Debtor did not inform him that she was considering filing for bankruptcy relief or that she was represented by counsel during this time period.  (*Id*. at Exh. 2, ¶ 7-8.)

B.  *The Bankruptcy Filing*.

The Debtor filed her chapter 13 petition on September 18, 2022.  (Base Case Dkt. No. 1.)   On Schedules E/F, the Debtor listed the debt at issue in this adversary proceeding, in the amount of $15,061.41, for "Overpayment of Medicaid."  (*Id*. at p. 28.[3])  The creditor is identified on the Debtor's schedules as:

> State of Michigan
> P.O. Box 30754
> Lansing, MI  48909

(*Id*.)   The Debtor also uploaded a creditor mailing matrix, in accordance with Local Rule 1007-2(c)(2).   The mailing matrix listed the MDHHS with the same name and mailing

---

[2]     The Debtor also attached the first page of a letter from AAG Goodkin to her Motion to Dismiss (AP Dkt. No. 7, at Exh. 1).  The Debtor's version of the letter is dated July 6, 2022, and is formatted slightly differently, but otherwise appears to be identical to the July 1, 2022, Goodkin demand letter.  In its brief, the MDHHS explains that this discrepancy arose because the letter was drafted on July 1, 2022, but not mailed until July 6, 2022.  (AP Dkt. No. 12, at n. 2.)  The Debtor has not contested this assertion and both parties have based their legal arguments on the assumption that the Debtor received one demand letter from AAG Goodkin.  In the absence of any evidence or argument to the contrary, the court has also generally assumed that the Debtor received only one letter from AAG Goodkin.

[3]     The page numbers referenced in this section are to the numbers assigned by the court's CM-ECF system.

address as was used in the Debtor's schedules. (*Id.* at p. 56.) The Debtor asserts that this address was consistent with the Goodkin demand letter, which was the last correspondence she received regarding the debt prior to the filing of her bankruptcy case.

The Debtor's proposed chapter 13 plan was filed contemporaneously with her petition. (Base Case Dkt. No. 2.) The Bankruptcy Noticing Center ("BNC") served the Debtor's proposed plan on all creditors listed on the mailing matrix on September 19, 2022, and filed a certificate of service with the court. (Base Case Dkt. No. 13.) However, instead of mailing the notice to the State of Michigan at the address listed by the Debtor, the BNC emailed the notice to the Michigan Accounts Receivable Collection System ("MARCS"), at the email address MarcsBankruptcyUnit@michigan.gov. (*Id.*) According to the MDHHS, MARCS is a third-party debt collector system utilized by the Michigan Department of Treasury for collecting unpaid taxes and other debts that are owed to the state. (AP Dkt. No. 12, at ECF p. 33-34.) It appears that the email notice was generated pursuant to the Department of Treasury's Electronic Bankruptcy Noticing ("EBN") filing with the BNC. In accordance with the EBN filed by the Department of Treasury, the combination of the generic name "State of Michigan" with the zip code and P.O. Box listed by the Debtor resulted in electronic notification being sent to the MARCS email address. The MDHHS asserts that the debt in this case was not owed to the Department of Treasury and was never referred to that department for collection. (AP Dkt. No. 12, at p. 34-35.) As a result, the MDHHS states that the notice to the MARCS email address did not provide it with actual notice of the proposed chapter 13 plan or the case itself. (*Id.* at p. 35.) The Debtor has not contested this assertion.

5

On September 22, 2022, the court entered a Notice of Chapter 13 Bankruptcy Case.  (Base Case Dkt. No. 14.)  The notice set the § 341 meeting of creditors for November 3, 2022, and identified the deadline for filing a nondischargeability complaint under § 523(a)(2) or (4) as sixty (60) days thereafter.  (*Id*.)  As a result, the deadline was January 3, 2023.[4]  The notice was served on the creditor mailing matrix by the BNC.  The certificate of service filed on September 25, 2022, shows that service was again made on the MDHHS via the MARCS Bankruptcy Unit email address.  (Base Case Dkt. No. 15.)  The MDHHS asserts that it did not receive this email notice from the BNC and that it did not have actual notice of the Debtor's bankruptcy case or the deadline for filing a nondischargeability complaint in the period immediately after the case was filed.

C.  *Post-Filing Events*.

Consistent with its representation that it was unaware of the bankruptcy filing, the MDHHS filed a state court complaint against the Debtor on September 21, 2022.  (AP Dkt. No. 12, Exh. 2, at ¶ 9.)  The complaint was served on the Debtor on December 21, 2022.  (*Id*. at Exh. 2, ¶ 10.)  On February 16, 2023, well after the January deadline for filing nondischargeability actions, the Debtor's bankruptcy counsel contacted AAG Goodkin by telephone and informed him of the pending chapter 13 case.  (*Id*. at Exh. 2, ¶ 12.)  According to AAG Goodkin, this was the first point at which he had actual knowledge of the bankruptcy case.  (*Id*. at Exh. 2, ¶ 14.)

---

[4]     Sixty days after November 3, 2022, places the deadline at January 2, 2023.  The court was closed on January 2, 2023, in observation of New Year's Day, a legal holiday.  Accordingly, the deadline was automatically extended to the following day under the Bankruptcy Rules.  *See* Fed. R. Bankr. P. 9006(a)(1)(C).

D. *The Adversary Proceeding*.

On March 23, 2023, the MDHHS commenced the present adversary proceeding by filing its Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523(a). (AP Dkt. No. 1.)  The complaint asserts that the Home Help overpayments received by the Debtor were the result of the Debtor's fraud in failing to disclose certain relevant facts to the MDHHS, including that she was married to one of the beneficiaries for whom she provided home health care.  As a result, the complaint argues that the debt to the MDHHS for the overpayments should be excepted from the Debtor's discharge under § 523(a)(3). The Debtor filed an answer to the complaint on April 20, 2023.  (AP Dkt. No. 4.)  At an initial pretrial conference held on May 31, 2023, the parties informed the court that the timeliness of the MDHHS's complaint was a potentially dispositive preliminary issue.  The Debtor's Motion to Dismiss was filed shortly thereafter on June 27, 2023.  The MDHHS filed a response to the motion and the court held a hearing on August 2, 2023.  At the conclusion of the hearing, the court took the matter under advisement.

## III.    DISCUSSION.

A. *Applicable Legal Standard*.

The Debtor's motion, which is styled as a "Motion to Dismiss" does not specify the procedural rule on which it is based.  In determining the appropriate legal standard to apply to the motion, the court notes two important factors.  First, the motion was filed after the Debtor's answer to the complaint, which means it cannot be construed as a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *See* Fed. R. Bankr. P. 7012(b) (making Fed. R. Civ. P. 12(b)-(i) applicable in adversary proceedings); Fed. R. Civ. P. 12(b) (Rule 12(b)(6)

motion to dismiss must be made "before pleading if a responsive pleading is allowed"). Second, and more importantly, both parties have submitted "matters outside of the pleadings" in support of their respective positions. The Debtor attached the Goodkin demand letter to her Motion to Dismiss, and the MDHHS submitted the Goodkin affidavit in support of its response. Because the court did not exclude these materials, and has considered them in its decision, the court will treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56 and Fed. R. Bankr. P. 7056.[5] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")

Rule 56(a) states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P 56(a) (made applicable to this proceeding by Fed. R. Bankr. P. 7056). When considering a motion for summary judgment, the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial*." Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986). All facts and related inferences

---

[5] Although the parties and the court have consistently referred to the Debtor's motion as a Motion to Dismiss, the court finds that both parties have had "a reasonable opportunity to present all the material that is pertinent to the motion" such that it is appropriate to treat the motion as a request for summary judgment. *See* Fed. R. Civ. P. 12(d). The court further notes that the standard for evaluating a motion to dismiss filed after the pleadings are closed is not materially different than the summary judgment standard for purposes of this adversary proceeding. *See JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581-82 (6th Cir. 2007) (When evaluating a motion for judgment on the pleadings under Rule 12(c), the court must accept all well-pled factual allegations of the party opposing the motion as true, and the motion is only to be granted "when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law.").

are to be viewed in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (citation omitted).

B.  *Timeliness of the Adversary Complaint*.

In general, § 523(c) requires creditors seeking to except debts from discharge under § 523(a)(2), (4), or (6) to obtain a nondischargeability determination from the bankruptcy court by filing an adversary proceeding.  11 U.S.C. § 523(c); *see also* Fed. R. Bankr. P. 7001(6).  Bankruptcy Rule 4007(c) governs the time for bringing such a request. In chapter 13 cases, it provides that a complaint to determine the dischargeability of a debt under § 523(a)(2) or (4) must be filed "no later than 60 days after the first date set for the meeting of creditors under § 341(a)."  Fed. R. Bankr. P. 4007(c).  This time period may be extended "for cause," but only if a party in interest files a motion to extend prior to expiration of the 60-day period.  *Id*.  In this case, the 60-day period for filing a complaint to determine the dischargeability of debts under § 523(a)(2) or (4) expired on January 3, 2023.  There is no question that the MDHHS failed to file its adversary complaint or a motion to extend prior to the deadline.

If, however, the MDHHS lacked timely notice of the Debtor's bankruptcy case, as it has alleged, the debt it is owed may be excepted from discharge under § 523(a)(3). *See In re Wilcox*, 529 B.R. 231, 236 (Bankr. W.D. Mich. 2015); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3d Cir. 1995) ("Inadequate notice is a defect which precludes

discharge of a claim in bankruptcy.").   Section 523(a)(3) governs the claims of creditors

who are omitted from the debtor's schedules. It provides, in relevant part, that:

> A discharge under section . . . 1328(b) of this title does not discharge an
> individual debtor from any debt –
>
> . . . .
>
>> (3) neither listed nor scheduled under section 521(a)(1) of this title,
>> with the name, if known to the debtor, of the creditor to whom such
>> debt is owed, in time to permit –
>>
>> . . . .
>>
>>> (B) if such debt is of a kind specified in paragraph (2), (4), or
>>> (6) of this subsection, timely filing of a proof of claim and timely
>>> request for a determination of dischargeability of such debt
>>> under one of such paragraphs, unless such creditor had
>>> notice or actual knowledge of the case in time for such timely
>>> filing and request[.]

11 U.S.C. § 523(a)(3)(B).  Pursuant to Bankruptcy Rule 4007(b), a complaint to determine

the dischargeability of a debt under § 523(a)(3) "may be filed at any time."  Fed. R. Bankr.

P. 4007(b) (establishing the time frame for filing a complaint "other than under § 523(c)");

*In re Wilcox*, 529 B.R. at 236 n.6 ("A complaint to except a debt from discharge under

§ 523(a)(3) is a complaint 'other than under §523(c),' even if the debt is 'of a kind'

described in § 523(a)(2), (a)(4), and (a)(6).")  The rationale for this distinction is readily

apparent, as it would not make sense "to hold creditors to a deadline of which they were

not aware, especially given a debtor's duty – the first duty listed in the statute – to make

them aware by filing a list of all creditors so that they may have notice of the proceedings

in time to participate."  *In re Wilcox*, 529 B.R. at 236 (citing 11 U.S.C. § 521(a)(1)(A)).

In this proceeding, it is undisputed that the MDHHS lacked actual notice of the

Debtor's bankruptcy filing prior to the deadline for filing a nondischargeability complaint

because both the Notice of Chapter 13 Bankruptcy Case and the Chapter 13 Plan were

10

served electronically on the MARCS Bankruptcy Unit, which is not affiliated with the MDHHS.  The Goodkin affidavit confirms that neither he nor the MDHHS actually received these notices and the Debtor has not contested this assertion.  As a result, the critical question in this proceeding is whether the notice provided by the Debtor to the MDHHS was so inadequate as to compel the conclusion that the MDHHS was effectively "neither listed nor scheduled . . . in time to permit" the filing of a timely nondischargeability complaint under § 523(c).  "The requisite notice, for parties affected by a debtor's bankruptcy, is embodied in Bankruptcy Code § 342(a)." *In re Stough*, No. 11-35232, 2012 WL 2563848, *5 (Bankr. N.D. Ohio June 29, 2012) (unpublished opinion).  Section 342(a) requires that notice of an order for relief in a bankruptcy case be given "as is appropriate." 11 U.S.C. § 342(a).

The Code does not, however, give any additional guidance of what constitutes appropriate notice to creditors at the outset of a bankruptcy case.[6]  In a case decided prior to enactment of the Bankruptcy Code, the Sixth Circuit has held that there is no "per se rule as to what constitutes a duly scheduled debt." *Ford Motor Credit v. Weaver*, 680 F.2d 451, 456 (6th Cir. 1982) (addressing noticing requirements under § 7a(8) of the Bankruptcy Act, which is substantially similar to § 342 of the Code).  Instead, the question is whether the Debtor's scheduling of the debt fulfills the purpose of the noticing

---

[6]     This contrasts with other provisions of the Code and Rules, such as Fed. R. Bankr. P. 7004, which governs service of process in adversary proceedings and sets forth specific rules for how service should be accomplished.  *See, e.g.*, Fed. R. Bankr. P. 7004(b)(6) (permitting service to be made on state entities by mailing "a copy of the summons and complaint to the person or office upon whom process is prescribed to be served by the law of the state in which service is made when an action is brought against such a defendant in the courts of general jurisdiction of that state, or in the absence of the designation of any such person or office by state law, then to the chief executive officer thereof").

11

requirement, which is to "enable creditors to receive timely notice of bankruptcy proceedings which may affect their interests." *Id*.   Courts have interpreted this guidance as requiring "at a minimum" notice that comports with "established standards of constitutional due process." *In re Stough*, 2012 WL 2563848 at *5 (citing *Jeld-Wen, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010)).   That is, the notice given must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."   *Id*. (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 657 (1950)).   Under this standard, minor errors in scheduling a creditor's address will not necessarily render the notice insufficient, so long as the errors do not actually deprive the creditor of reasonable notice.   *In re Stough*, 2012 WL 2563848 at *6 (citing *Ford Motor Credit v. Weaver*, 680 F.2d at 456-57).[7]

Appropriate notice in bankruptcy cases begins with the debtor.   As previously noted, it is the debtor's responsibility to file a list of creditors whose rights may be affected by the bankruptcy case.   11 U.S.C. § 521(a)(1)(A).   Bankruptcy Rule 1007(a)(1) requires the debtor in a voluntary case to file a "list containing the name and address of each entity included or to be included on Schedules D, E/F, G, and H" with their bankruptcy petition. Fed. R. Bankr. P. 1007(a)(1).   This court's Local Rule 1007-2(c) also requires a debtor to file, or upload, a mailing matrix containing each creditor's name and address.

---

[7]      The debtor in *In re Stough* "omitted the directional designation and was off by one digit on the street address" when she scheduled a debt owed to The Toledo Hospital. *Id*. at *6.  The court determined that these minor errors were unlikely to have deprived the hospital of adequate notice, particularly when no return mail was received and the hospital was "a major medical provider and cover[ed] a large geographical area, making it likely that the post office would have recognized and cured the minor defects in the address listed by the Debtor." *Id*. at *6-7.

The task of providing notice to creditors of the order for relief, and of the deadline for filing a complaint to determine dischargeability of debts subject to § 523(c), rests with the Clerk of the Bankruptcy Court.  *See* Fed. R. Bankr. P. 2002(f)(1) & (5).  Such notice is accomplished in a chapter 13 case by issuance of Official Bankruptcy Form 309I, "Notice of Chapter 13 Bankruptcy Case," which includes the deadline for objecting to a debtor's discharge under § 1328(f) or to the dischargeability of particular debts under § 523(a)(2) and (4).  However, because the Clerk relies upon the information supplied by the debtor when providing notice, it is the debtor's responsibility to ensure that the identities and addresses of creditors are listed correctly.  *In re Stough*, 2012 WL 2563848, at *5 ("The burden is, therefore, placed upon a debtor to ascertain the correct address of his or her creditors so that they may be afforded appropriate notice.") (citing *In re O'Shaughnessy*, 252 B.R. 722, 734 (Bankr. N.D. Ill. 2000) and *Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1103 (5th Cir. 1984) ("It is clear that one of the primary purposes of the list of creditors in the schedules is to provide to the court information as to persons entitled to notice.")).  When the creditor is a government entity, and therefore inherently part of a larger, bureaucratic structure, "a debtor should give special attention to insure timely and meaningful notice to the correct agency."  *United States Small Business Admin. v. Bridges*, 894 F.2d 108, 111 (5th Cir. 1990).

Although the burden of providing adequate notice ultimately falls on debtor, creditors can also take various actions to help facilitate proper notice in bankruptcy cases. First, under § 342(e), a creditor may file with the court, and serve on the debtor, a notice of the address to be used in the case.  Here, counsel for the MDHHS filed a notice of appearance in the base case, but not until March 23, 2023, well after the deadline for

13

filing a nondischargeability complaint.  Obviously, if the MDHHS lacked actual notice of the case until February 16, 2023, as it has established, it could not have filed an appearance prior to the 60-day deadline.  Second, under § 342(f)(1), a creditor may provide a notice of address to be used by all bankruptcy courts or a particular bankruptcy court in all cases.  This is accomplished by the creditor registering with the U.S. Bankruptcy Courts' National Creditor Registration Service, which may include Electronic Bankruptcy Noticing ("EBN") if the creditor so chooses.  In this case, counsel for the MDHHS stated that he was not aware whether the MDHHS had registered for EBN. However, the Michigan Department of Treasury has registered for EBN using a variety of combinations of more than seventy (70) names, numerous addresses and post office boxes, and several zip codes.

When the creditor is a federal or state governmental unit or taxing authority, like the MDHHS, the creditor may also help assure adequate notice by filing a designation of its mailing address with the Clerk of Court.  Bankruptcy Rule 5003(e) provides, in relevant part, that "the state or territory in which the court is located may file a statement designating its mailing address" and that the Clerk shall keep a register of the addresses so designated.  Fed. R. Bankr. P. 5003(e).  Rule 5003(e) further states that the mailing address listed on the register is "conclusively presumed to be a proper address for the governmental unit" although the failure to use that address does not automatically invalidate notice that is otherwise effective.  *Id*.  The Rule is thus intended to "provide a source where debtors, their attorneys, and other parties" may go to determine the appropriate address for providing notice to governmental agencies, and a sender who

14

uses the address listed on the register can be "assured that the mailing address is proper." *See* Fed. R. Bankr. P. 5003 advisory committee's note to 2000 amendment.

In this case, it is apparent that the process of providing notice to the MDHHS took several wrong turns, many of which were attributable to the Debtor and a couple of which were outside of her control.  To begin, the court notes that the most recent Rule 5003(e) designation of mailing addresses for agencies within the State of Michigan, which is available to the public on the court's website, was provided to the court by the State in December 2012.[8]  The register includes designated addresses for two predecessors to the MDHHS, the Department of Community Health and the Department of Human Services, but does not include an address for the MDHHS.

Without an updated registry to refer to, the Debtor began the process of providing notice of her case by identifying the creditor to whom the debt was owed generically as "State of Michigan," instead of specifically listing the MDHHS on her schedules and mailing matrix.  The Debtor made this choice despite the fact that both the recoupment letter and the Goodkin demand letter reference the debt as being owed to the MDHHS-OIG.  This was a material error, as providing notice to the "State of Michigan" is generally not equivalent to providing notice to one of its agencies, such as the MDHHS.  *See* Fed. R. Bankr. P. 5003 advisory committee's note to 2000 amendment (suggesting that the register maintained by the Clerk of Court under Rule 5003(e) may include separate addresses for each state agency); *cf. Jefferson County Dept. of Human Servs. v. Santos (In re Santos)*, 589 B.R. 413, 421 (Bankr. D. Colo. 2018) (holding that notice to the State

---

[8]     *See* Federal & State Taxing Authorities 5003(e), Bankr. W.D. Mich. (November 9, 2023), https://www.miwb.uscourts.gov/sites/miwb/files/StateAgencieswebsite.pdf [https://perma.cc/ED78-AHTH].

of Colorado was not sufficient to impute notice to the county or state Departments of Human Services).

The imprecise naming of the creditor was compounded by the fact that the Debtor utilized the address shown on the Goodkin demand letter, which was the most recent correspondence the Debtor received about the debt prior to filing her bankruptcy case, on her schedules and mailing matrix.[9]   This choice had significant consequences, because the combination of the generic name "State of Michigan" with the address and zip code listed by the Debtor, triggered a match to the Department of Treasury's EBN filing, and caused the BNC to send the initial notices in this case via electronic means to the MARCS email address used by the Department of Treasury.   The certificates of service filed by the BNC in the base case confirm that the name and address combination listed by the Debtor resulted in email notification being sent to the MARCS email address, which is associated with the Department of Treasury, not the MDHHS.   Again, the notice that was received by the Department of Treasury may not be imputed to the MDHHS.

---

[9]      In her motion, the Debtor argues that providing notice to the MDHHS at the address listed on the Goodkin demand letter, which was the one piece of correspondence she received in the ninety days prior to filing her bankruptcy case, complied with § 342(c)(2). (*See* AP Dkt. No. 7, at ¶ 9.)  That section provides:

> If, within the 90 days before the commencement of a voluntary case, a creditor supplies the debtor in at least 2 communications sent to the debtor with the current account number of the debtor and the address at which such creditor requests to receive correspondence, then any notice required by this title to be sent by the debtor to such creditor shall be sent to such address and shall include such account number.

11 U.S.C. § 342(c)(2)(A).  This argument is not persuasive because the Debtor has only provided one communication from AAG Goodkin, the July 6, 2022 demand letter, not two as would be required for this provision to become applicable.  Even if the Debtor received more than one copy of the Goodkin demand letter (*see supra* note 2), the letter does not request that future correspondence be sent to the address listed on the letterhead, but instead encourages the Debtor to contact AAG Goodkin by email or telephone.  The Goodkin demand letter does not implicate § 342(c)(2)(A).

16

*Bridges*, 894 F.2d at 113 (notice will not be imputed from one government agency to another; instead, a government entity will not be charged with knowledge of a bankruptcy case "unless the agency particularly responsible for and familiar with the claims against the debtor has notice or actual knowledge").

Although the court acknowledges that the manner in which the notices were sent was at least partially attributable the Department of Treasury's EBN filing, which the Debtor likely did not foresee and certainly could not control, these noticing issues were all downstream of the Debtor's original choice as to how to schedule the debt.  There were also several other actions the Debtor could have taken that may have avoided this result.  For instance, the Debtor could have scheduled the debt with the same name and address, but added additional identifying information, such as by referencing the MDHHS specifically or including AAG Goodkin's name.  This additional information would likely have circumvented the EBN filing and caused the BNC to send the initial notices by regular mail.  Alternatively, it may have prompted additional investigation by the recipient of the MARCS email notice.  Neither of those things occurred here, due to the lack of detail utilized by the Debtor in scheduling the debt.  More importantly, the Debtor could have scheduled the MDHHS at additional or alternative addresses that were readily available.  For example, the Debtor could have provided notice to the MDHHS at the address listed on the May 13, 2022, letter that advised the Debtor of the initial overpayment determination.  (*See* Complaint, AP Dkt. No. 1, at Exh. 3.)  Use of the name and address on that letterhead, "Department of Health and Human Services, P.O. Box 30062, Lansing, Michigan 48909," would have resulted in appropriate, and most likely actual, notice to the MDHHS.  The MDHHS website also clearly identifies its Director,

17

Elizabeth Hertel, and states the Department's address as "333 S. Grand Ave., P.O. Box 30195, Lansing, Michigan 48909."  Service of the MDHHS director, at the address listed on the Department's website, would have almost certainly been considered appropriate under the circumstances.  Again, that did not occur.

The court also recognizes – based upon its own experience and after reviewing the dockets of other adversary proceedings involving the MDHHS – that myriad agency names, street names and numbers, and post office boxes are used by debtors when scheduling the MDHHS as a creditor.  Sometimes that results in an adversary proceeding being filed not later than sixty days after the first date set for the § 341 meeting, either because the creditor had actual notice of the case or because notice was indeed adequate.  Sometimes, as here, that does not happen.

Regardless of what could have been, the Debtor choose to list her debt as being owed to the "State of Michigan" and to utilize the address on the Goodkin demand letter.  As the party with the ultimate responsibility for ensuring that creditors receive adequate notice of the bankruptcy case, the Debtor must now accept the consequences of this choice.  In this instance, the way in which the Debtor scheduled the debt did not result in the MDHHS receiving actual or appropriate notice of the bankruptcy case.  Under these circumstances, the court cannot conclude that the debt to the MDHHS was duly listed or scheduled in time to have permitted the filing of a timely nondischargeable debt complaint.  The Debtor is not entitled to judgment on this basis as a matter of law, and the MDHHS may pursue its nondischargeability claim under § 523(a)(3).

18

## IV.    CONCLUSION.

For the foregoing reasons, the court concludes that the MDHHS did not receive adequate notice of the Debtor's bankruptcy case in time to file a timely nondischargeability complaint.  As a result, the MDHHS may seek a determination that the debt it is owed is nondischargeable under § 523(a)(3).  The Debtor's Motion to Dismiss the complaint as untimely is denied and a separate order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated November 14, 2023**



James W. Boyd
United States Bankruptcy Judge